We'll now move to the second and last case that's on our oral arguments calendar. That's United States v. Barnes. Let me just make sure counsel is on the line. Mr. Angioletti? Yes, I'm on the line. Great. And you can see and hear everybody okay? Yes, I can. Perfect. And Mr. Learning? Yes, Your Honor. Learning, but yes, I can hear. I have a misprint, but all right, Mr. Learning, and you can see and hear everybody all right? I can. Thank you, Your Honor. All right. So you've each got 10 minutes, but Mr. Angioletti has reserved one minute for rebuttal. So Mr. Angioletti, the floor is yours. Thank you, Your Honor. When I first got this case, I read the Fatico hearing, and the court's characterization of the jailhouse phone call, which it weighed very heavily in its determination that Leggett was the senior partner in the operation with him and Dante Barnes. It's very much dependent, according to what the court says, in its determination that the jailhouse phone call shows that he's a senior partner. So there's no transcript of the jailhouse phone call. Mr. Leeming sent me the tape right as soon as I asked for it, which I appreciate. I listened to the tape, and it, to me, it seems very different than the way the court interpreted it. Can I interrupt a second for a minute, Mr. Angioletti? Because the point here is not that your client got an enhancement for role. It's that it was simply relevant, the phone call was relevant to demonstrate that they were engaged in joint activity. But what the determinant, no, it's not like a 3B1.1 leadership enhancement. But what it does, the court uses this notion that Mr. Leggett is the senior partner to justify the cross-attribution of what Mr. Leeming very aptly refers to as the Farmington drugs, the drugs from the three control buys that Barnes does in Farmington and the drugs that are recovered from his house. So the senior partner is a linchpin in the district court's determination that the Farmington drugs are appropriately cross-attributed to Mr. Leggett. So I think the best thing to do, and the senior partner aspect also plays, it's weighed very heavily against Mr. Leggett as the court's giving its reasons for sentence, it says he's the senior partner. So when I thought this was going to be a live argument, I was going to just bring the disc and hand it up. But whatever the court wants to do in terms of getting that disc and listening to it, because I make a lot of reference to it in my brief, Mr. Leeming makes a lot of reference to the jailhouse phone call in his brief. And I think it's important that the court take a listen to that and draw its own conclusions and see if this senior partner business, which is the linchpin of a lot of what the court finds. But I mean, there was a lot of other evidence that the court relied on, right? I mean, the fact that Barnes packaged drugs in Leggett's apartment, that Barnes came and left the apartment when only Leggett was likely to have been there, that there was drug packaging materials in the apartment, that Barnes and Leggett used the same packaging material. So those are all in addition to the phone call, right? Yeah. But understand, I'm not contesting the attribution of Leggett's drugs in his own apartment, nor am I contesting the control buys that were made near Leggett's apartment, because clearly there's a nexus between Leggett and his apartment and the drugs that were sold near his apartment. What I am contesting is the three in Barnes's apartment pursuant to the search warrant. And I think that the thing that I, in terms of cross attribution, the court came down with a decision on Monday, United States against Willis. And it's across, it has some similarities to this case, in terms of it's a two man operation. It's drugs cross attributed from location control by one defendant to the location to the other defendant. And the thing that struck me about, there are a lot of differences between Willis and the instant case in terms of there's an acquitted conduct issue that we don't have. Counsel, could I ask you a question? At the sentencing hearing, the transcript appears to reflect that there were no objections to the guideline calculations, except for acceptance of responsibility and obstruction of justice issues. That's correct. Doesn't that foreclose your argument that the guidelines were calculated wrong with respect to drug quantity in terms of relevant conduct? No, what it does is it makes my burden harder because I have to show plain error. But to me, it was a real head scratcher that defense counsel did not raise the drug quantity and, you know, at least challenging the farming and drugs and did challenge. That's forthcoming. There's also the district court made an explicit finding that this was part of a jointly undertaken activity. So the standard there also would be error for the judge's factual finding. But it's got to be more than just jointly undertaken activity. Clearly it's jointly undertaken activity, but there are other aspects before which I give the requirements in my brief. Mr. Leeming gives the requirements in his brief. I don't think they're all met. Mr. Leeming does. But the joint activity is in and of itself doesn't justify the cross attribution. But he also found reasonably foreseeable that the other sales were reasonably foreseeable. But there's got to be more than that. Okay. And in terms... One other factual question. Yes. You do your calculations with respect to the additional drugs that should be included. And do I understand your calculations correctly that if you calculated the guidelines as they're written with respect to the amount of converted weight for crack, that the guidelines would be exactly the same as calculated by the district court? It's only if you apply the district court's regular procedure of treating crack the same way as cocaine that you come up with a lower guideline calculation. If that's true, then isn't the conclusion that under the guidelines as written, even with your argument, the guidelines were correctly calculated? And this is something that the judge should have taken into account perhaps on the 3553A factors? I think that what saves me on that issue is where the judge says, I'm not going to bother to do the calculations of the crack as powder, because using all of the drugs, including the Farmington drugs, it wouldn't make a difference. The judge is right about that. But the reason that I gave you the calculation of powder cocaine is because subtracting the Farmington drugs, then it does make a difference if you use the powder, if the judge had followed his usual practice and counted the crack the same as powder cocaine. Don't we have to follow the guidelines as written in terms of determining whether there's a procedural error? Not when the judge says, I didn't do the calculation. The judge gives a clear indication. If you look at what he says about his usual practice of the guidelines concerning the crack and the powder cocaine, it's pretty clear that had it made a difference, he would have followed it. And I see that I'm trespassing on the court's time now. Was there anything you wanted to say with respect to the substance of unreasonableness? The thing that concerns me the most is the disparity. Because when the court says, there's no disparity issue, because this is a within guideline sentence. That's just plain wrong. And it struck me in this case, where he imposes a 92 month sentence on Leggett, again, because he's the senior partner, and 60 months on Barnes. Well, wait, I mean, it's not clear that they're similarly situated when Barnes didn't get obstruction of justice points because he didn't lie at a Fatico, and he got full credit for acceptance of responsibility. So how are they similarly situated? Because I acknowledge that they're not similarly situated in terms of Barnes, in terms of Leggett, getting the obstruction and losing the points, which, quite frankly, reading the transcripts, that was richly deserved. But even taking that into consideration, where Barnes was the laboring or in all of this stuff, where Barnes had, I think, the obstruction of justice for Leggett, is kind of balanced out by the fact that Barnes was in a higher criminal history category. And after all the stuff that Barnes did, the fact that Barnes made $20,000, which was found in the safe in his condo, where Leggett in his miserable little had only $100. I think still, the 92 months is a big chunk, when you consider that Leggett was not very active in any of this. Now, the court says, well, see, this shows that Leggett was the senior partner because he stayed inside and he didn't do the street level stuff. And I don't buy that at all, because Barnes is the one that's negotiating price. Barnes is the one that's getting the money. That's what street sellers do. But I mean, clearly, you disagree with what the judge did. But is it clearly erroneous? That's really the question. There are facts, the judge drew inferences. What is there to show that this is a clearly erroneous inference? The fact that almost every inference that the judge drew was colored on the senior partner business, which was engendered by his interpretation of the phone call. And I think if you listen to that phone call, you're going to be wondering, how does show he's the senior partner? Because the phone call has Leggett telling Barnes stuff like, you do what's best for you. And you make sure your lawyer explains stuff to you in a way that you can understand it. And you make sure that your lawyer gives you the documents. The district court viewed that, he characterized it as Leggett manipulating Barnes. And like I say, it, my interpretation is my interpretation. But I think if the court listens to it, the court will have some very great questions about this senior partner thing. Why? I mean, why did you think that you just sort of give it to us at oral argument? And now you want to give it to us later? Like, that's not the way this is done. Why is it not part of the appellate record? What prevented you from making it part of the appellate record? Well, what I did, because I wasn't sure how to proceed, I dropped a footnote in the brief, that if, you know, both parties have talked about this, and I would, I would be happy to forward it to the court if the court wants it. And that that was sort of my signal, because look, the parties make the appellate record, we don't, you know, ask them to supplement. Anyway, let's see what Mr. Leeming has to say. And you're going to get some rebuttal time. So maybe we'll revisit this issue then as well. Okay. So Mr. Leeming, you may proceed. Thank you, Your Honor. May it please the court. Brian Leeming on behalf of the United States Attorney's Office for the District of Connecticut representing the government in this matter. As the Your Honor just noted, there is no error, let alone clear error in the district court's determination, whereby attributed all the drugs, including the so called Farmington drugs to Mr. Leggett as part of his jointly undertaken activity. As discussed at length in the brief, the drugs that are at issue are, as explained by my adversary, the drugs that were found in the search warrant in the Farmington address, occupied by Mr. Barnes, as well as drugs acquired through three controlled purchases that were done near the Farmington address where Mr. Barnes resided. But the court made numerous factual findings, not simply based upon the phone call and not simply based upon the status or characterization by the district judge that Mr. Leggett was a senior partner. There were numerous factual findings and particularized findings that the court made that established both the scope of the jointly undertaken criminal activity and the defendant's, that is Mr. Leggett's, knowledge and what was reasonably foreseeable to him. The information included reliable source information that Mr. Leggett and Mr. Barnes worked together. There was, as the court noted, even Mr. Barnes admitted that he would use Mr. Leggett's apartment to package narcotics and then bring them back to his apartment in Farmington. There was factual findings supported by the record that the drugs were packaged at a hearing. There was similar packaging materials found in both locations during the execution of the search warrant. And there was obvious indications in the Leggett apartment, not only based upon the fact that drug transactions occurred outside the apartment, but that it was used as a fentanyl mill with multiple types of packaging and paraphernalia, as well as masks that you would commonly see in the packaging of fentanyl. Underscoring the court's factual findings is the repeated lies by Mr. Leggett during the Fatico hearing, where he in fact denied a drug relationship with Mr. Barnes and even Mr. Barnes refuted. Mr. Leggett lied in various instances, not only about what he did, but what his knowledge about what Mr. Barnes did. And I think that further justified the district court's opinion in findings that the nature of their relationship was much more than Mr. Leggett was characterizing it, that they were fully involved in the full scope of the drug activity. And the simple fact that more drugs and more money were found at Mr. Barnes' apartment doesn't negate the reasonable inference that the court found that they were reasonably perceivable to Mr. Leggett, especially given the nature of their relationship. The phone call isn't just significant to support the district court's finding of the characterization of Mr. Leggett as a senior partner. But again, the dynamic of the conversation is such that Mr. Leggett and Mr. Barnes are clearly concerned about who was the confidential informant that saw the drugs in the apartment and trying to figure out who that was. That in and of itself, I think the court found established their relationship. If they had no relationship as Mr. Leggett had testified, then why would they be discussing about who the informant was who told the police about Leggett's apartment and having drugs in it? The fact of the matter is, as the court found, the evidence also supported a finding that Mr. Leggett, by having Mr. Barnes do the higher risk street level narcotic trafficking, that sort of cemented again, not only a superior role, but certainly at least an equal role in the overall drug scheme. So the factual findings by the district court were amply supported to both show the scope of the jointly undertaken criminal activity, but the reasonably foreseeable miss to Mr. Leggett as to all of the drugs. I'll touch briefly on the substantive reasonableness. I think as the court has already noted that they are not similarly situated, the disparity in the sentencing guideline range was driven almost completely by the lack of acceptance by Mr. Leggett and the obstruction enhancement. Even the sentencing range advocated by counsel would put the court sentence within the guideline range. So it's hard to say that the sentence at the low end of the properly calculated range by the district court and slightly above the midpoint range advocated by Mr. Leggett would be shockingly high or otherwise run a foul of substantive reasonableness. Other than that, I'm happy to answer any specific questions that the court may have, but otherwise I'm happy to have my, the government's argument rest on the brief. Any questions from the panel during none? No. All right. Mr. Angeletti, you have a minute for rebuttal. Okay. I just want to address in terms of the recording of the jailhouse phone call. I wasn't quite sure because it's seldom that I have a disc that I want the court to hear. And I wasn't quite sure how to proceed. And the concern that I had in just get lost. And I thought that the way to ensure, first of all, I thought that after the court read the briefs, the court would want to hear the tape. And I thought by dropping the footnote that says, I will make the tape available. Then I would get a phone call and I would know exactly who to send it to at the, at the circuit. Have you had this happen before where you just sort of suggest there might be things that would be useful in the record and maybe the court will let you know if they want you to supplement it? It's not the norm, would you say? It's for me, it's not the norm to have a disc exhibit. Okay. But this can be duplicated. You're not, you're familiar with that concept. I understand that, but there's no way to file a disc. Well, I mean, I'm not sure that that's right. I mean, we get video and we get audio as part of an appellate record all the time. And then transcripts can also be made of an audio recording. So, so, all right. Anything else you'd like to say, Mr. Angelou? No, Your Honor. Thank you, Mr. Angelou. Appreciate your explanation. So, all right. We will reserve decision.